UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANGELA COOK,<br><br>                    Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>                    Defendant. | Case No. 3:12-cv-00377-RCJ-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Plaintiff, who is pro se,[1] has filed a Motion for Reversal of Social Security's Decision. (ECF No. 29.)[2] The Commissioner filed a Cross-Motion for Summary Judgment (ECF No. 30) and response to Plaintiff's motion. (ECF No. 31.)[3] Plaintiff filed a response to the cross-motion. (ECF No. 32.)

After a thorough review, the court recommends that Plaintiff's motion be denied; that the Commissioner's cross-motion be granted; and that the decision of the Social Security Administration (SSA) be affirmed.

**I. BACKGROUND**

Plaintiff filed an application for Social Security Supplemental Security Income (SSI) on October 22, 2007. (Administrative Record (AR) 135-37.) The Social Security Administration

---

[1] Plaintiff appears before the court pro se, but Plaintiff was represented by counsel at the hearing before the administrative law judge. (ECF Nos. 30/31 at 3; Administrative Record 29, 73.)

[2] Refers to the court's Electronic Case Filing number.

[3] These documents are identical.

1  (SSA) denied her application initially and on reconsideration. (AR 119-127.) Plaintiff requested
2  a hearing before an administrative law judge (ALJ). (AR 131.) On July 12, 2010, Plaintiff
3  appeared, represented by counsel, and gave testimony on her own behalf before ALJ Robert
4  Tronvig. (AR 73-111.) On December 22, 2010, the ALJ issued a decision finding Plaintiff not
5  disabled. (AR 26-42.) Plaintiff requested review which was denied by the Appeals Council,
6  making the ALJ's decision the final decision of the Commissioner. (AR 1-6.)

7  Plaintiff now seeks review from the district court. (ECF No. 29.) Plaintiff argues that her
8  case should be remanded because the ALJ conducted her hearing in what she feels was an
9  unprofessional manner. (*Id*.) She asserts that ALJ asked her if she could sort screws and bolts for
10  a living, and states that she cannot do that for an extended period of time due to numbness in her
11  hands which causes her to have to shake her hands out every few minutes. (*Id*.) She asserts that
12  the parts of the audio recording of the hearing are inaudible, and that parts of the written
13  transcript are not completely accurate. (*Id*.) She contends that the ALJ yelled at her and made
14  disparaging comments about the amount of her student loans. (*Id*.) She also indicates that SSA
15  mailed the ALJ's decision to her old address; but, she was apparently still able to timely file her
16  appeal, so the court will not address this argument.

17  The Commissioner disputes Plaintiff's assertions and argues that the ALJ's decision
18  should be affirmed. (ECF Nos. 30/31.)

## II. STANDARD OF REVIEW

**A. Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation Process of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).In the first step, the Commissioner determines whether the claimant is

1  engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is
2  denied. 20 C.F.R. §  404.1520(a)(4)(i), (b); §  416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the
3  claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

4  The second step requires the Commissioner to determine whether the claimant's
5  impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and
6  § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits
7  the claimant's physical or mental ability to do basic work activities. *Id*.

8  In the third step, the Commissioner looks at a number of specific impairments listed in
9  20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the
10 impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.
11 § 404.1520(a)(4)(iii), (d) and §  416.920(a)(4)(iii), (c). The Commissioner presumes the Listed
12 Impairments are severe enough to preclude any gainful activity, regardless of age, education, or
13 work experience. 20 C.F.R. §  404.1525(a). If the claimant's impairment meets or equals one of
14 the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed
15 disabled. 20 C.F.R. §  404.1520(a)(4)(iii), (d), §  416.920(d). If the claimant's impairment is
16 severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to
17 step four. *Yuckert*, 482 U.S. at 141.

18 At step four, the Commissioner determines whether the claimant can still perform "past
19 relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past
20 relevant work is that which a claimant performed in the last fifteen years, which lasted long
21 enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R.
22 § 404.1565(a) and § 416.920(b)(1).

23 In making this determination, the Commissioner assesses the claimant's residual
24 functional capacity (RFC) and the physical and mental demands of the work previously
25 performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231
26 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R.

§ 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements,

1  and there are three separate tables, one for each category: sedentary work, light work, and
2  medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative
3  notice of the numbers of unskilled jobs that exist throughout the national economy at the various
4  functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's
5  ability to find work, including the claimant's age, education and work experience. *Id*. For each
6  combination of factors, the Grids direct a finding of disabled or not disabled based on the
7  number of jobs in the national economy in that category. *Id*.
8      If at step five the Commissioner establishes that the claimant can do other work which
9  exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,
10 if the Commissioner determines the claimant unable to adjust to any other work, the claimant
11 will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071;
12 *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the application date of her application. (AR 31.)

At step two, the ALJ concluded Plaintiff has the following severe impairments: diabetes, osteoarthritis, degenerative joint and disc disease, asthma, hypertension, dwarfism and obesity. (AR 31.)

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listed Impairments. (AR 33.)

At step four, the ALJ concluded Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), that involves occasional postural and manipulative activities; with limited exposure to fumes, dust and other respiratory irritations; limited exposure to hazardous heights and machinery; and with a requirement of a special chair to accommodate her stature. (AR 34.) The ALJ found Plaintiff unable to perform any past relevant work. (AR 36.)

At step five, considering Plaintiff's age (41), education (GED), work experience and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, and she is not disabled. (AR 36-38.)

**B. Transcript**

Plaintiff claims both that the audio recording of the hearing is insufficient, and that the written transcript is inaccurate in places.

Regarding the audio recording, as part of the Commissioner's answer to an action seeking review of the ALJ's decision, the Commissioner is required to "file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). An audio recording is not required. Therefore, the alleged inaudibility of the recording does not provide a basis for remand.

With respect to the written transcript, the Commissioner contends that there were only four inaudible words in the entire written transcript (AR 76, 87, 109), none of which render those portions of the transcript incomprehensible. (ECF Nos. 30/31 at 4.) The Commissioner also points out that Plaintiff provides no support for her claim that portions of the transcript are missing. (*Id.*)

While Plaintiff generally asserts that certain portions of the transcript are inaccurate, the only specific portion of the transcript she identifies as inaccurate is the portion where her student loans are discussed, where she contends the ALJ made disparaging comments about the amount of student loans she had taken out and about her taking money from the government that are not contained within the transcript.

The transcript was provided by a court reporter who certified it is a true and complete transcription of the testimony provided. (AR 111.) The transcript does contain a discussion about Plaintiff's student loans and grants, but the derogatory comments Plaintiff contends the ALJ made are not present. Those alleged comments will be addressed *infra*, when the court discusses Plaintiff's allegations of bias. As Plaintiff has not identified any other specific portion of the transcript as missing or inaccurate, the court does not find there is a basis for remanding insofar as the transcript is concerned.

**C. Ability to Pick up and Sort Bolts**

Plaintiff states that the Commissioner asked her whether she could sort bolts for a living, and now states:

> [T]he truth is I can't do that for an extended time, since I have numbness in my hands, which is made worse when my hands are extended in front of me, such as typing a letter. I have to shake my hands every few minutes, which I can do at home, but it isn't conducive to an efficient working experience. I have an appointment scheduled with a neurologist (September 18, I believe) to try and discover the cause and if it can be reversed or treated.

(ECF No. 29 at 1.)

The Commissioner contends that Plaintiff's statement five years after the hearing that she cannot do this job for an extended period of time does not indicate anything wrong with the ALJ's conduct of the hearing, differs from her sworn testimony five years ago, and is unsupported by the evidence. (ECF Nos. 30/31 at 3.) The ALJ found Plaintiff's subjective symptom testimony was not credible. (*Id*. at 3-4.) If her condition has now deteriorated, it is relevant to a new claim of disability. (*Id*. at 4.)

At the hearing, the ALJ asked Plaintiff about the claimed neuropathy in her hands: "Suppose I had a job that required you to sort bolts -- bolts -- some bolts the size of my thumb and some bolts the size of my finger. Could you do that job with your diabetic peripheral neuropathy?" (AR 98.) Plaintiff responded: "Well, it depends. If they're very small, on some days are better than others, but if I wasn't picking them up, maybe like scooting them around[.]" (AR 98.) The ALJ asked if she could "pick them up and put the small ones there and the big ones over here." (AR 98.) Plaintiff responded: "Possibly. It -- like I used -- like with the -- like sewing I can't hold the needle because I just -- I can't hold it anymore like I used to so like small objects are difficult to hold." (AR 98-99.)

42 U.S.C. § 405(g) governs judicial review of final decisions of the Commissioner. It provides that the court has "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Sentence six of 42 U.S.C. § 405(g) provides in pertinent part that the court:

>may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...

42 U.S.C. § 405(g).

In determining whether to remand on the basis of new evidence, the court must look at "whether the new evidence is material to a disability determination and whether the claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). To be material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" *Id*. (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). There must also be a reasonable possibility that the new evidence would have changed the outcome of the determination had it been before the ALJ. *Id.* (citation omitted). "To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Id*. at 463 (citations omitted).

The Commissioner is correct that Plaintiff's statement about the condition of her hands in 2015, is immaterial to whether she was disabled from 2007 up to the time the ALJ rendered his decision in 2010. Therefore, this argument does not serve as a basis to remand this matter.

**D. Student Loans**

Plaintiff argues that the ALJ inappropriately inquired into her student loan status and made disparaging comments about the amount of her loans and her relying on the government, and, in essence, that this shows the ALJ's bias toward her.

The Commissioner argues this is not reflected in the certified copy of the transcript. (ECF Nos. 30/31 at 4.) The Commissioner also contends there is no other evidence of bias. (*Id*. at 4-5.) The Commissioner asserts that it was reasonable for the ALJ to inquire about her loans to confirm there were no unreported sources of income as Plaintiff had reported being on "on and off" full-time college student since her alleged disability onset date. (*Id*. at 5.) In addition, Plaintiff's vocational counselor reported that Plaintiff preferred to be a student rather than find a job. (*Id*., AR 35, 81, 390-92.) The Commissioner contends that the record reflects that Plaintiff

1  exclusively supported herself through student loans and grants while attending college classes.
2  *Id.*, citing AR 79, 83, 80.)
3       In her response, Plaintiff asserts that she was not in school at the time of her hearing, but
4  had been the previous year. (ECF No. 32.)
5       As the Commissioner points out, ALJs are presumed to be unbiased, *Valentine v. Astrue*,
6  574 F.3d 685, 690 (9th Cir. 2009), and this may be rebutted by "a showing of conflict of interest
7  or some other specific reason for disqualification," *Rollins v. Massanari*, 261 F.3d 853, 857-58
8  (9th Cir. 2001) (internal citation and quotation marks omitted). "[E]xpressions of impatience,
9  dissatisfaction, annoyance, and even anger, ... are within the bounds of what imperfect men and
10 women ... sometimes display[,] [and] do not establish bias." *Rollins*, 261 F.3d at 857-58 (internal
11 citation and quotation marks omitted). Instead, a plaintiff must "show that the ALJ's behavior, in
12 the context of the whole case, was so extreme as to display clear inability to render fair
13 judgment," *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001) (citing *Liteky v. United
14 States*, 510 U.S. 540, 555-56 (1994)).
15      Plaintiff testified that as of the fall of 2009 she was a full time student. (AR 79.) Plaintiff
16 also testified that she wanted to go back to school to finish her degree. (AR 81.) When she was
17 asked why she was not then enrolled, she testified that she was told she had taken too many
18 classes so she could not get financial aid, and that she had no other means of income. (AR 83.)
19 The ALJ then asked Plaintiff about the amount she was receiving in grants and loans. (AR 83.)
20 He asked what her student loan balance was, and she testified it was pretty high, in the $20,000
21 range. (AR 83-84.) She also testified she received maybe $8,000 in grants in addition to the
22 loans. (AR 84-85.) The ALJ went on to question Plaintiff about her employment history. (AR 85-
23 86.)
24      After the ALJ asked how Plaintiff was currently supporting herself, she testified: "I have
25 no income at all right now. My friends help me out when they can, but that's about it." (AR 89.)
26 The ALJ responded: "Okay. I don't accept or tolerate crying here so don't cry, okay," indicating
27 that Plaintiff had started to cry when giving this testimony. (AR 89-90.) Plaintiff said she was
28

trying not to cry, and the discussion then moved on to Plaintiff's daily activities and medical condition. (AR 90-911.)

As indicated above, the disparaging comments Plaintiff refers to regarding the amount of her student loans and her taking money from the government do not appear in the certified transcript. Even if the comments did appear in the record, the court does not find those comments amount to bias. While the ALJ may have at times conducted himself in an abrupt and insensitive manner, the court cannot conclude that the record as a whole shows the ALJ's behavior was so extreme as to display a clear inability to render a fair decision.

**F. Conclusion**

With no basis to remand this matter, the court recommends that the Commissioner's cross-motion be granted, and that the ALJ's decision be affirmed.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion (ECF No. 29) be **DENIED**; that the Commissioner's cross-motion (ECF No. 30) be **GRANTED**; and that the decision of SSA be **AFFIRMED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: February 9, 2016.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE